Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Milan L. Brandon, SBN 326953
  mbrandon@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, California  92067
Telephone: (858) 759-9930
Facsimile:  (858) 759-9938
*Attorneys for Plaintiff and Counter-
Defendant Mostre Exhibits, LLC*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSTRE EXHIBITS, LLC., | Case No. 3:20-cv-01332-BAS-BLM |
| Plaintiff, | **PLAINTIFFS' OPPOSITION TO DEFENDANT SENTINEL INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| SENTINEL INSURANCE COMPANY, LIMITED; INSURANCE OFFICE OF AMERICA, INC., a Florida Corporation, d/b/a IOA Insurance Services; and Does 1 to 30, inclusive, | Date:       April 26, 2021<br>Time:       8:30 a.m.<br>Courtroom:   4B<br>Judge:       Hon. Cynthia Bashant |
| Defendant. | |
| | Trial Date:    March 8, 2022 |

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................ 1

II.   LEGAL STANDARD ...................................................................... 2

III.  STATEMENT OF FACTS .............................................................. 2

IV.  ARGUMENT .................................................................................... 3

    A.    The Putative Virus "Exclusion" Does Not Bar Coverage. .................. 3

         1.    The "Virus Exclusion" is Unenforceable Because It is Not Conspicuous, Plain, or Clear. ........................................ 3

         2.    If the Virus Exclusion Were to Apply, The Limited Coverage Is Manifestly Illusory. ............................................ 6

         3.    Sentinel's Federal Case Law is Inapposite and Inapplicable ...................................................................... 11

    B.    Plaintiff Alleges Direct Physical Loss to Property ........................... 13

         1.    Direct Physical Loss or Damage Due to the Coronavirus Need Not Be a Permanent Deprivation. .................................... 13

         2.    Direct Physical Loss Does Not Require a Tangible, Physical Alteration to Property, but Rather Encompasses Loss of Use. ...................................................................... 18

         3.    Sentinel Authority that Insured's Loss of Use is Not "Direct Physical Loss of or Damage to Property" is Inapposite ........................................................................ 20

    C.    The Policy's Civil Authority Provision Provides Coverage for Claimed Losses and Expenses. .................................................... 23

    D.   Plaintiffs' Claims Survive 12(b)(6) Motion to Dismiss. ................... 24

         1.    Plaintiff's Contract-Based Claims (Counts 1-3) Survive. ........ 24

         2.    Plaintiff's Professional Negligence Is Dismissed. .................. 24

V.    CONCLUSION .............................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

*Federal Cases*

*10e v. Travelers Indem. Co. of Connecticut*,
  2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) ........................................ 15, 16, 20

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*,
  2002 WL 31185884 (D. Minn. 2002) .................................................... 17

*Blue Springs Dental Care, LLC v. Owners Ins. Co.*,
  2020 WL 5637963 (W.D. Mo. Sept. 21, 2020) .................................... 24

*Century Sur. Co. v. Gene Pira Inc.*,
  2014 WL 6474987 (C.D. Cal. Nov. 19, 2014) ...................................... 7

*Colgan v. Sentinel Insurance Company*,
  2021 WL 472654 (N.D. Cal., Jan. 26, 2021) ....................................... 12

*Cooper v. Travelers Indem. Co. of Illinois*,
  Case No. C-01-2400-VRW, 2002 WL 32775680 (N.D. Ca. Nov. 4,
  2002), *aff'd,* 113 F. App'x 198 (9th Cir. 2004) ................................. 14, 18, 19

*Crosby Estate at Rancho Santa Fe Master Assoc. v. Ironshore
  Specialty Ins. Co.*,
  2020 WL 6449202 (S.D. Cal. 2020) ...................................................... 9

*Erie Railroad v. Tompkins*,
  304 U.S. 64 (1938) ................................................................................. 11

*Esparaza v. Burlington Ins. Co.*,
  866 F.Supp.2d 1185 (E.D. Cal., 2011) ................................................ 13

*Evanston Ins. Co. v. Atain Specialty Ins. Co.*,
  2014 WL 6474987 (N.D. Cal., 2017) .................................................... 7

*Founder Inst. Inc. v. Hartford Fire Ins. Co.*,
  No. 20-CV-04466-VC (N.D. Cal., Feb. 12, 2021) ............................... 12

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*,
  2020 WL 7342687 (N.D. Cal., Dec. 14, 2020) .................................... 12, 13

*Hutner v. North American Co. for Life and Health Ins.*,
  671 F.Supp.2d 1182 (S.D. Cal., 2009) ................................................ 24

# TABLE OF AUTHORITIES

*Federal Cases*

*Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*,
  636 F.Supp.2d 995 (C.D. Cal. 2009)...................................................................7

*Kingray Inc v. Farmers Group, Inc.*,
  2021 WL 837622 (C.D. Cal., Mar. 4, 2021)................................................22, 25

*Long Affair Carpet and Rug, Inc. v. Liberty Mut. Ins. Co.*,
  2020 WL 6865774 (C.D. Cal. Nov. 12, 2020)..................................................21

*Maffei v. Northern Insurance Co. of New York*,
  12 F.3d 892 (1993) .............................................................................................6

*Mich. Battery Equip., Inc. v. Emcasco Ins. Co.*,
  892 N.W. 2d, 456 (Mich. Ct. App. 2016) .........................................................13

*Millenium Inorganic Chemicals, Ltd. v. Nat'l. Union Fire Ins. Co. of
  Pittsburgh*,
  2012 WL 4480708 (D. Md. 2012).....................................................................17

*Millenium Inorganic Chemicals, Ltd. v. Nat'l. Union Fire Ins. Co. of
  Pittsburgh*,
  744 F.3d 279 (4th Cir. 2014) ............................................................................17

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
  2020 WL 5525171 (N.D. Cal. Sept. 14, 2020)............................................21, 24

*Navarro v Block*,
  250 F.3d 729 (9th Cir. 2001) .............................................................................2

*Ofir v. Transamerica Premier Life Ins. Co.*,
  2018 WL 1172656 (S.D. Cal., Mar. 6, 2018).....................................................13

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*
  –F.Supp.3d--, 2020 WL 5500221 (S.D. Cal, Sept. 11, 2020) .....................20, 21

*Pasadena Area Cmty. Coll. Dist. v. Philadelphia Indem. Ins. Co.*,
  2018 WL 6265078 (C.D. Cal. Jul. 27, 2018) ......................................................7

*Protégé Restaurant Partners, LLC v. Sentinel Insurnace Company*,
  2021 WL 428653 (N.D. Cal., Feb. 8, 2021).......................................................12

- iii -

1

## <u>TABLE OF AUTHORITIES</u>

2

*Federal Cases*

3

*S.A. Hospitality Group, LLC. v. Hartford Fire Ins. Co.,*
    No. 3:20-cv-01033-VLB (D. of Ct., Jul. 22, 2020)................................21

4

5

*Studio 417, Inc. v. Cincinnati Ins. Co.,*
    2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) ...................................18

6

7

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.,*
    2018 WL 3829767 (C.D. Cal. July 11, 2018) ..............................14, 20

8

9

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.,*
    2021 WL 131446 (E.D. Pa., Jan. 14, 2021) ......................................12

10

11

*United States v. LSL Biotechnologies,*
    379 F.3d 672 (9th Cir. 2004) ..............................................................2

12

13

*Urogynecology Specialist of Florida, LLC v. Sentinel Ins. Co.,*
    --F.Supp.3d --, 2020 WL 5939172 (M.D. Fla, Sept. 24, 2020) ..........23

14

*Water Sports Kauai, Inc. v. Firemans Fund Ins. CO.,*
    2020 WL 6562332 (N.D. Cal., Nov. 9, 2020) ...................................20

15

16

*Wilson v. Hartford Casualty Co.,*
    2020 WL 5820800 (E.D. Penn., Sept. 30, 2020)................................13

17

18

*WPB No. 1, LLC v. Valley Forge Ins. Co.,*
    2007 WL 9702161 (S.D. Cal., Mar. 27, 2007)...................................12

19

20

21

*California Cases*

22

*Baldwin v. AAA Northern California, Nevada, & Utah Ins. Exch.*
    1 Cal.App.5th 545 (1st Dist. 2016) .....................................................4

23

24

*Bank of the West v. Superior Court.*
    2 Cal.4th 1254 (1992)........................................................................17

25

26

*Best Rest Motel, Inc. v. Sequoia Insurance Company*,
    37-2020-00015679-CU-IC-CTL (San Diego Cnty, Sept. 24, 2020).................21

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

*California Cases*

3

4

*Boardwalk Ventures CA, LLC v. Century-National Ins. Co.*,
   No. 20STCV27359 (Los Angeles Cnty, Mar. 18, 2021) ............................ 15, 25

5

6

*Broberg v. Guardian Life Ins. Co. of Am.*,
   171 Cal.App.4th 912 (2009) ....................................................................... 4

7

8

*Dominguez v. Financial Indem. Co.*,
   183 Cal.App.4th 388 (1st Dist. 2010) ....................................................... 4

9

10

*Goodwill Industries of Orange Cnty, California v. Phil. Indem. Ins.
   Co.*,
   No. 30-2020-01169032-CU-IC-CXC (Orange Cnty., Jan. 28, 2021) .......... 15, 25

11

12

*Haynes v. Farmers Ins. Exch.*,
   32 Cal.App.4th 1198 (2004) ...........................................4, 6, 11, 13, 15

13

14

*Hughes v. Potomac Ins. Co. of D.C.*,
   199 Cal.App.2d 239 (1962) ....................................................... 19, 22

15

16

*Jones v. Crown Life Ins. Co.*,
   89 Cal.App.3d 630 (1978) ................................................................. 6

17

18

*Julian v. Hartford Underwriters Ins. Co.*,
   35 Cal.4th 747 (2005) ..................................................................... 10

19

20

*Logan v. John Hancock Mut. Life Ins. Co.*,
   41 Cal.App.3d 988 (1974) ................................................................. 6

21

22

*Md. Cas. Co. v. Reeder*,
   211 Cal.App.3d 961 (2011) ............................................................... 7

23

*MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
   187 Cal.App.4th 766 (2010) ....................................................... 14, 15

24

25

*Safeco Ins. Co. of America v. Robert S.*
   26 Cal.4th 758 (2001)) ................................................................... 23

26

27

*Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.*,
   78 Cal.App.4th 847 (2000) .......................................................... 7, 8, 11

28

1

## <u>TABLE OF AUTHORITIES</u>

2

*California Cases*

3
4

*State Farm Auto. Ins. Co. v. Jacober,*
    10 Cal.3d 193 (1983) ..................................................................................... 4

5
6

*Strickland v. Federal Ins. Co.,*
    200 Cal.App.3d 792 (1988) ......................................................................... 19

7
8

*Thee Sombrero, Inc. v. Scottsdale Ins. Co.,*
    28 Cal.App.5th 729 (4th Dist. 2018) .......................................................... 14

9
10

*Tomaselli v. Transamerica Ins. Co.,*
    25 Cal.App.4th 1269 (1994) .......................................................................... 4

11
12

*Vardanyan v. AMCO Ins. Co.,*
    243 Cal.App.4th 779 (2015) ........................................................................ 10

13

*Other State Cases*

14
15

*Cherokee Nation v. Lexington Ins. Co.,*
    No. CV-2020-150 (Ok. Sup. Court, Cherokee Cnty., Jan. 14, 2021) ............. 22

16
17

*Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Neb.,*
    528 N.W.2d 329 (Neb. 1995) ......................................... 8, 9, 11, 12, 25

18
19

*North State Deli, LLC v. Cincinnati Ins. Co.,*
    No. 29-CVS-02569 (Durham Cty. Sup. Ct., N.C., Oct. 7, 2020) ............... 22, 24

20
21

*Perry Street Brewing Company, LLC v. Mutual of Enumclaw Ins. Co.,*
    No. 20 2-02212-32 (Spokane Cty. Sup. Ct. Nov. 23, 2020) ...................... 22, 24

22

23

*California Statutes*

24

Cal. Civil Code § 1638 ....................................................................................... 9

25
26

Cal. Ins. Code § 530 ......................................................................................... 10

27

28

Plaintiff MOSTRE EXHIBITS, LLC ("Mostre" or "Plaintiff") hereby submits this Memorandum of Points and Authorities in opposition to the Motion for Judgment on the Pleadings ("Motion") submitted by Defendant SENTINEL INSURANCE COMPANY, LIMITED ("Sentinel" or "Defendant") to Plaintiff's Complaint ("Complaint"), and states as follows.

## I.   INTRODUCTION

The insurance industry has known that a virus may cause serious interruption to businesses for many years. For this reason, long before the COVID-19 pandemic began, most insurers chose to guard against this risk by putting clear, conspicuous virus exclusions in their business income policies. Sentinel did not choose to do so. Instead, Sentinel chose to entice Mostre to purchase a business interruption policy (the "Policy") that allegedly included limited virus coverage, up to at least $50,000 per insured location – a coverage prominently listed on the Policy's declarations pages. *See* Exhibit A to the Declaration of Adam Kretz at 16 and 18) ("Ex. A."). Then, without calling it to their insureds' attention, Sentinel buried a densely packed, three-page endorsement for limited virus coverage deep in a policy encompassing hundreds of pages of convoluted language. *See* Ex. A at 138.

That confusing endorsement contained what Sentinel now speciously characterizes to be a "virus exclusion" that allegedly forestalls virus coverage unless it results from opaquely defined "specified causes of loss." Although ostensibly determinative, the "specified causes of loss" are listed, without cross-reference, in an entirely separate part of the Policy. *See* Ex. A at 59. Hence, the Policy, in both form and content, is virtually indecipherable by the ordinary insured. In light of these facts, the controlling California Supreme Court authority discussed below, which must be applied in this diversity case, would require coverage here because the so-called "virus exclusion" is anything but conspicuous, plain, and clear.

Even if this Court were to find the "virus exclusion" to be sufficiently conspicuous (which it should not), the "specified causes of loss" provision

nevertheless encompasses losses caused by vehicles and airplanes. *Id.* Since the virus was carried by people traveling in automobiles and airplanes, coverage should be triggered. Sentinel impliedly admits this conclusion must follow when it takes the position that the virus would be covered if carried by another one of the "specified causes of loss" (i.e. a windstorm). *See* Motion, 12–13. If, however, this interpretation is not acceptable, then Sentinel has sold a policy offering only an impermissible illusion of coverage for a virus that results in business interruption.

In short, Sentinel's bad faith position seeks to improperly nullify an express grant of coverage offered by the declaration pages of the Policy. For these reasons, and those discussed below, Sentinel's motion must be denied.

## II.   LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(b)(6) tests the sufficiency of the claims. *Navarro v Block*, 250 F.3d 729, 732 (9th Cir. 2001). To state a cognizable claim under federal notice pleading, a plaintiff is required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In reviewing a motion to dismiss, the Court should construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded facts alleged. *United States v. LSL Biotechnologies,* 379 F.3d 672, 698 (9th Cir. 2004). Further, the Court should draw **all** possible inferences in plaintiff's favor. *Id.*

## III.   STATEMENT OF FACTS

The COVID-19 pandemic has wreaked havoc on businesses throughout the United States. Among the sectors most devastated is the convention industry and the vendors who serve it. A combination of stay-at-home orders and blanket prohibitions on large gatherings has completely forestalled this entire category of economic activity from operating. Compl. at ¶ 35. Plaintiff is a limited liability company that designs, produces, and rents exhibits for business' use at all manner of trade shows, conferences, and other gatherings. Compl. at ¶ 1. Due to a combination of the

pandemic itself, the physical presence and impact of the coronavirus, and the associated government orders, the coronavirus has caused "physical loss of or damage to" business property both at Mostre's own properties and at the properties for which it manufactures exhibits (i.e. "dependent properties".) This "physical loss of or damage to" business property has required closure of manufacturing facilities, hotel meeting spaces, convention centers, and other gathering places, causing a dramatic evaporation of business income. Compl. at ¶ 35. The losses are real, tangible, physical, and direct, and, most importantly, covered by the Policy.

## IV.   ARGUMENT

### A.   The Putative Virus "Exclusion" Does Not Bar Coverage.

Throughout its motion, Sentinel continually refers to the presence of a purported "virus exclusion" that Sentinel claims operates to bar coverage of Mostre's damages. However, enforcement of this exclusion would violate California insurance jurisprudence because (1) the virus exclusion is unenforceable as it is not conspicuous, plain, or clear; and (2) application of the exclusion would render any purported coverage under the Policy's limited virus coverage provisions illusory.

#### 1.   The "Virus Exclusion" is Unenforceable Because It is Not Conspicuous, Plain, or Clear.

Sentinel's motion repeatedly references the presence of a putative "virus exclusion" that allegedly operates to bar coverage. However, even a cursory review of the Policy demonstrates that the putative exclusion is neither conspicuous, plain, nor clear as required under California law. First, the Policy's declarations pages (*See* Ex. At 14–27) contain no reference to the presence of a "virus exclusion." Instead, the declarations only indicate that the Policy provides "Limited Fungi, Bacteria, or Virus Coverage" in the amount of $50,000 for each of Mostre's insured locations. *See* Ex. A at 16 and 18. Second, the operative endorsement itself is styled as a **coverage endorsement** for Fungi, Bacteria, or Virus property coverage. *See* Ex. A at 138. It is only after the insured attempts to review a convoluted and complex three-page endorsement that the putative exclusion finally appears. *Id.*

In California, an insurer has the burden of "notifying insureds of reductions in otherwise reasonably expected coverage." *Tomaselli v Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1281–82 (1994). If an insurer "deals with the public upon a mass basis, the notice of noncoverage of the policy, in a situation in which the public may reasonably expect coverage, must be **conspicuous, plain, and clear**." *Haynes v. Farmers Ins. Exch.,* 32 Cal.App.4th 1198, 1208 (2004). Therefore, in order to satisfy notice requirements, California law requires that reductions in coverage be "placed and printed so that [they] will attract the reader's attention." *Id.* at 1204. *See also Broberg v. Guardian Life Ins. Co. of Am.,* 171 Cal.App.4th 912, 922–23 (2009) (holding that to be conspicuous, coverage limitation must be "displayed or presented in a way that would be 'noticed' by a reasonable person."); *Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange*, 1 Cal.App.5th 545, 533 (1st Dist. 2016); *State Farm Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 201–202 (1983).

In *Haynes*, the California Supreme Court concluded that a declarations page's failure to alert a reader to the fact that a certain endorsement contained a paragraph which limited coverage for permissive users, for an amount lower than the policy coverages otherwise prominently displayed on the policy's declarations pages for that same endorsement, was not enforceable because the limitation was ***not*** sufficiently conspicuous, plain, or clear. *Id.* at 1206–1207. *See also Dominguez v. Financial Indem. Co.,* 183 Cal.App.4th 388 (1st. Dist. 2010) (limitation construed valid when limitation appeared on **both** declarations pages and the insuring provision itself.)

As in *Haynes*, coverage under the Subject Policy for virus is indecipherable to the average insured.  This is because the insured has to go through a six-step process to determine coverage: (1) The insured has to review the declarations pages which expressly provide limited virus coverage (Ex. A at 16 and 18); (2) The insured has to then find the endorsement in the voluminous Policy which boldly provides for limited virus coverage in its caption (*Id.* at 138–140); (3) The insured then has to

- 4 -

painstakingly read that densely packed three page special endorsement to find what Sentinel calls a "virus exclusion" (*Id.*); (4) Next, the insured has to determine if there is an exception to that exclusion that applies to a virus caused by a covered "specified cause of loss" (*Id.* at 139); (5) Then, without guidance, the insured has to try to find the provision containing the potentially covered "specified causes of loss", located in an entirely separate part of the Policy (*Id.* at 59) [1]; and (6) The insured has to determine if the otherwise covered specified causes of loss contain a separate limitation, such as for "fire and explosion", that further limits the coverage provided by the exception to the virus exclusion (*Id.* at 139.) (*See* Motion, page 11, lines 4-7). Therefore, the insured has to go through at least a six-step, mind-numbing process to determine if the promised virus coverage actually exists under this Policy.

Nevertheless, the complexity does not end there. This is illustrated by by Sentinel's own Motion: "The Virus Exclusion has two exceptions: (1) when the virus results from fire or lightening or (2) when certain limited additional coverage is applicable. . . *See* Ex. A at 135 [*sic*, 139]." Motion at 4, Fn. 1. Thus, the Policy apparently provides *additional* limited virus coverage for "Equipment Breakdown". Sentinel's confusingly quoted statement in its footnote (incorrect Policy citation aside), actually has it backwards. This is because if the virus results from "fire or lightening" or "equipment breakdown" – which is absurd to even suggest–then it is not an exception to the "virus exclusion" at all; rather, it is a separate limitation on the coverage purportedly provided by the "specified cause of loss" section–which lists the exceptions to the purported virus exclusion. When presented with a policy of lesser complexity in *Maffei v. Northern Ins. Co. of New York*, 12 F.3d 892, 895

---

[1] Evidently, the Policy is so complex that even Sentinel itself is not aware of where the definition of "Specified Cause of Loss" is located, as evidenced by their incorrect citation to page 56 of the policy in their Motion. *See* Motion at 11:10. If the insurer itself cannot find the definition, what hope does an ordinary insured have?

(1993), the Ninth Circuit, applying California law, reversed the District Court's interpretation of an exception to the pollution exclusion of a policy. In *Maffei*, the Ninth Circuit held that the question of whether a 'hostile fire' occurred that caused pollution was a factual question, reversing summary judgment for the insurer.

The above enumeration clearly demonstrates that the average insured (and, apparently, even the insurer's own lawyers) cannot be expected to navigate the Policy's tangled web of confusing provisions to determine the proper application of the limited virus coverage endorsement, especially when Sentinel's interpretation renders that coverage meaningless. Moreover, "[i]n the case of standardized insurance contracts, exceptions and limitations on coverage that the insured could reasonably expect, must be called to his attention, clearly and plainly, before the exclusions will be interpreted to relieve the insurer of liability or performance." *Logan v. John Hancock Mut. Life Ins. Co*., 41 Cal.App.3d 988, 995 (1974). That was simply not done in this case and Sentinel cannot demonstrate otherwise. The "insurance policy language is to be interpreted according to the understanding of the average layman; to wit, a reasonable person of average intelligence." *Jones v. Crown Life Ins. Co*., 89 Cal.App.3d 630,639 (1978) (internal quotations omitted). Sentinel simply cannot argue with a straight face that the Policy's convoluted virus coverage is understandable to the "average layman". Rather, their argument is a perfect example of interpretative "sleight of hand"–purporting to give virus coverage with one hand only to deceptively take it away with the other.

In light of the foregoing, because *Haynes* is controlling authority here, this Court should find that the Policy language patently fails the California Supreme Court's conspicuousness requirement and reject Sentinel's Motion accordingly.

### 2.    If the Virus Exclusion Were to Apply, The Limited Coverage Is Manifestly Illusory.

In seeking to escape its obligation to pay benefits that are clearly due under the Subject Policy, Sentinel next posits that Plaintiff is mistaken that the limited virus

coverage could never apply in any case. Here, too, in support of its position, Sentinel advances a line of argument that is inapposite. Indeed, their position demonstrates that the only means by which an insured can hope to recover under the Policy for a virus are situations that exist only in Sentinel's imagination. However, even in the event that this Court were to determine that the disputed coverage is not, in fact, illusory, Plaintiff *has*, nevertheless, alleged facts sufficient to sustain a claim for coverage based on the "Specified Causes of Loss" in the Policy.

### a. Sentinel's Interpretation Gives Rise to Illusory Coverage.

In California, "insurance coverage is deemed illusory when the insured receives no benefits under the policy." *Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F.Supp.2d 995, 1007 (C.D. Cal. 2009) (citing *Md. Cas. Co. v. Reeder*, 211 Cal.App.3d 961, 978 (1990)). "An interpretation that would render the objectively reasonable expectations of the insured for coverage under the policy 'meaningless' is an example of illusory coverage. Factors that may be considered in determining the existence of 'illusory coverage' are: (1) the business of the insured; and (2) the procedures of the insured in carrying on its business." *Illusory,* CALIFORNIA INSURANCE LAW DICTIONARY & DESK REFERENCE § 12:2 (2019) (citing *Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.*, 78 Cal.App.4th 847, 874, *modified on denial of reh'g* (Mar. 29, 2000)).

A court will generally refuse to apply an exclusion if it completely eliminates all potential coverage for a risk under a policy. *See Pasadena Area Cmty.Coll. Dist. v. Philadelphia Indem. Ins. Co.,* No. LA 17-CV=08569 VAP (FFMx), 2018 WL 6265078, at *8 (C.D. Cal. July 27, 2018) (citing *Evanston Ins. Co. v. Atain Specialty Ins. Co.,* 254 F.Supp.3d 1150, 1166 (N.D. Cal. 2017)); *Century Sur. Co. v. Gene Pira, Inc.,* No. CV 13-07289 DPP (AGRx), 2014 WL 6474987, at *3 (C.D. Cal. Nov. 19, 2014) ("Insurance policies may not provide illusory coverage.")

In order to analyze whether coverage is illusory, a review of the operative policy provisions is necessary. Even a perfunctory review of the crabbed limited

virus endorsement evidences that the endorsement itself necessitates a challenging hunt through other policy provisions in order to interpret its operation. First, the endorsement indicates that the coverage described within it "only applies when the. . .virus is the result of one or more of the following causes . . . (1) a "specified cause of loss" other than fire or lightning." *See* Ex. A at 139. Then, the term "specified causes of loss" is not defined in the subject endorsement. Instead, the insured must search through literally hundreds of pages of policy language to find the definition buried on the last page of the Special Property coverage form. *See* Ex. A at 59.

Here, the Limited Fungi, Bacteria and Virus coverage at issue concurrently contains a virus exclusion and a list of impracticable conditions that must be satisfied in order for coverage to trigger. An interpretation of the policy that would either give effect to the virus exclusion discussed above or limit coverage to situations caused by the above-discussed specified causes of loss (or both), improperly renders the "Limited Virus Coverage" term meaningless. It is manifestly illusory because it "defeats the objectively reasonable expectations of the insured." *Shade Foods, Inc. v. Innovative Prod. Sales & Mktg. Inc,* 78 Cal.App.4th 847, 874 (2000). Here, the coverage at issue is illusory because it is written in such a way that it gives Mostre the "illusion" that the policy covers a risk that is not actually covered.

The absurdity of Sentinel's position is manifestly illustrated by the one out-of-state case that Sentinel cites for the proposition that coverage can, in fact, exist under the "specified causes of loss" in this Policy. In *Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Neb.,* 528 N.W.2d 329 (Neb. 1995), a farmer obtained a farm policy from an insurance company that specializes in insuring farm risks. The policy at issue encompassed physical losses to livestock arising from windstorms. The insured then suffered losses due to the infection of his swine herd after a tornado carried a virus into his operation. The insurer denied the farmer's claim on the grounds that its damages were not caused by a windstorm. The court held that "the windstorm is considered the dominant, efficient cause which set the concurring cause [the virus] in motion," and "where a virus has been transmitted by means of a

covered peril, the covered peril has been held to be the proximate cause of the loss." *Id.* at 333.

Sentinel claims that just because "an event may not be an everyday occurrence does not render the coverage illusory." Motion at 13:9–10. Their purpose in citing *Curtis* is perplexing and unexplained. It would appear that Sentinel is attempting to suggest that the Subject Policy's language is not illusory because it would somehow afford coverage if a windstorm *did*, in fact, carry the coronavirus onto insured properties. If Sentinel is in fact admitting this to be a potentiality (or, indeed, a reality, as demonstrated by numerous windstorms that plagued the United States during the pandemic and ostensibly carried viral particles on their wings), then coverage may not be illusory. In any event, this potentiality would implicate factual questions of causation that are not proper for a motion for judgment on the pleadings.

In addition, *Curtis* is inapposite, as it deals with a farm policy (not a business income policy). *Curtis* in no way dealt with a limited virus coverage endorsement of the type at issue here. Indeed, the only way that a virus can cause damage under the "business policy" at issue in this case is if the virus can, in fact, infect humans. Any interpretation to the contrary defeats the reasonable expectations of the insured. Sentinel's attempt to assert that the fact that the Limited Coverage applies to multiple perils and multiple "specified causes of loss" without, tellingly, providing any examples of what those additional perils or causes of loss may be in this case betrays the tenuousness of their position. *See* Motion at 13: 11–12. Cal. Civil Code § 1638 provides that "[t]he language of a contract is to govern its interpretation if the language is clear and explicit, and does not involve an absurdity." *See also, Crosby Estate at Rancho Santa Fe Master Assoc. v. Ironshore Specialty Ins. Co.,* 2020 WL 6449202 (S.D. Cal., 2020). Application of the *Curtis* reasoning, which would transform "limited virus coverage" to some strange form of "limited windstorm coverage," would effectuate just such a contractual absurdity.

/ / /

### b. Even if Coverage Is Not Illusory, Plaintiff Has Stated Facts Sufficient to Allege Coverage.

In the event that this Court is persuaded to accept Sentinel's argument that the coverage provisions at issue are not illusory (which it should not), Mostre nevertheless pled facts sufficient to state a claim for coverage under the "specified causes of loss." In the definition of "specified cause of loss" provided above, Sentinel included "aircraft or vehicles" and "riot or civil commotion." In its complaint, Mostre alleged that "COVID-19 is spreading through all areas of the State." Compl. at ¶ 32. Mostre also alleged that "[t]he virus was also carried into this state by **individuals traveling between countries and states**, who in turn infected others and the facilities they visited, infecting property in and around the Insured Properties." Compl. at ¶ 34. Unless this Court were to insist that the term "individuals travelling" was somehow intended to mean "traveling only on foot," it stands to reason that the only way these individuals traveled was via "aircraft and vehicles" – both of which are patently "specified causes of loss" under the subject policy.

These alleged facts suffice to give rise to questions of fact surrounding the efficient proximate cause of Mostre's claimed damages. Under the California "efficient proximate cause" doctrine, the California Insurance Code, and California case law, an insurance company cannot contractually exclude or limit coverage when a covered peril is the "efficient proximate cause" of a given loss regardless of the presence of other contributing causes. *See* Cal. Ins. Code § 530, *Julian v. Hartford Underwriters Ins. Co.,* 35 Cal.4th 747, 751 (2005). Where a policy "provides coverage for a specified peril, if the specified peril is the predominant cause of the loss, the loss is covered regardless of whether there were excluded contributing causes." *Vardanyan v. AMCO Ins. Co.* 243 Cal.App.4th 779, 792 (2015).

Under the "efficient proximate cause" doctrine, then, the *virus* infection itself, and the vehicles and airplanes bringing the virus to the insured properties (and associated dependent properties, discussed below) are to be treated as two *separate*

and *distinct* causes of loss, with the vehicles and airplanes carrying travelers being the efficient proximate (i.e. predominant) cause of loss. The fact that travelers originating **from other states and countries** came to the states where the insured properties are located and, in turn, infected the insured properties (including associated dependent properties, as discussed below) was alleged in the Complaint. This is sufficient to survive the instant motion just as in *Curtis*, where the virus was transmitted by a covered cause of loss. In the event that the Court finds otherwise, these are defects that can be easily cured by amendment to the Complaint.

### 3.      Sentinel's Federal Case Law is Inapposite and Inapplicable.

Rather than addressing the clear California law that applies to *all* insurance exclusions, Sentinel seeks refuge in a litany of federal cases that either are inapposite or mis-apply California law. Sentinel is unable to point to any California *state* insurance case that interprets their Policy language in its favor. However, even the federal cases upon which Sentinel relies to prove-up the enforceability of their putative "virus exclusion" are inapplicable.

First, it must be noted that this Court is not bound by what other federal district courts may have ruled in other cases. The seminal case of *Erie Railroad v. Tompkins* 304 U.S. 64 (1938), stated the rule that "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, **the law to be applied in any case is the law of the State**. Whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern." *Id.* at 78 (emphasis added.) As such, this Court is bound by the applicable decisions of the California state courts, including *Haynes* and *Shade Foods*, discussed above. The *Haynes* and *Shade Foods* cases are dispositive as to the issue of the enforceability of the putative "virus exclusion."

Second, even if this Court were to accept other federal courts' interpretations of the Subject Policy or similar policies, the cases advanced by Sentinel are neither binding nor persuasive. *See, e.g.*, *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*,

*Inc.,* No. 20-cv-04434-JSC, 2020 WL 7342687 (N.D. Cal. Dec. 14, 2020) (misapplies *Curtis* as discussed above in finding coverage not illusory.) Sentinel's other cases are of similar marginal value. *Founder Inst. Inc v. Hartford Fire Ins. Co.*, No. 20-CV-04466-VC (N.D. Cal. Feb. 12, 2021) engages in no analysis and only conclusorily states that the subject virus coverage endorsement was not illusory, providing no basis upon which this Court can rely to render its decision.

The case of *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.,* No. 20-2401, 2021 WL 131446 (E.D. Pa. Jan. 14, 2021) does not address California law, and erroneously relies on the same specious, inapposite argument from *Curtis* involving a farm policy, windstorm, and virus infection of livestock (as opposed to humans). The cases of *Protégé Restaurant Partners, LLC v. Sentinel Insurance Company*, No. 20-cv-03674-BLF, 2021 WL 428653 (N.D. Cal. Feb. 8, 2021), and *Colgan v. Sentinel Insurance Company, Ltd.*, No. 20-cv-04780-HSG, 2021 WL 472654 (N.D. Cal. Jan 26, 2021), do not even bother to mention the term "illusory coverage" or engage in any analysis of the California case law addressing it.

Sentinel additionally attempts to argue that this Court should find that the Limited Coverage endorsement at issue here is enforceable because similar policy language was found to be enforceable in *WPB No. 1, LLC v. Valley Forge Ins. Co.,* No. 05CV2027-L(BLM), 2007 WL 9702161 (S.D. Cal. Mar. 27, 2007). However, *WPB* is facially distinguishable from the instant case. The dispute in *WPB* dealt with a sublimit on mold coverage where the insurer agreed to pay the sublimit because the mold damage at issue was unsurprisingly caused by a covered hurricane. The case involved a similar limited coverage endorsement for mold or virus, but the *exclusion* in that case was **not** at issue.  Moreover, there were no illusory coverage issues because the cause of loss in that case – a hurricane – was clearly listed as a covered cause of loss under the policy.  In other words, the exclusion was not at issue because the insurer recognized that the rain from the hurricane, and the wind damage that allowed the rain to enter a building, are common causes of mold.

Lastly, Sentinel attempts to argue that the endorsement at issue contains a valid exclusion that is "conspicuous, plain or clear." However, in so doing, Sentinel fails to address the controlling authority in *Haynes*, and makes no effort to demonstrate *how* the exclusionary language in the endorsement is conspicuous, plain or clear, especially in light of the coverage grant for coverage in the declaration pages of the policy. This is despite the fact that two of the cases upon which Sentinel relies expressly conduct the *Haynes* analysis. *See, Ofir v. Transamerica Premier Life Ins. Co.,* No. 17cv1544-MMA (JMA), 2018 WL 1172656 (S.D. Cal. Mar. 6, 2018); and *Esparza v. Burlington Ins. Co.*, 866 F.Supp.2d 1185, 1201 (E.D. Cal. 2011). Instead, Sentinel relies on a federal case that does not perform any analysis to substantiate its conclusion that the subject endorsement was conspicuous, plain, or clear (*Franklin,* 2020 WL 5642483, at *2) and out-of-state cases that do not address California law. *See, e.g., Mich Battery Equip., Inc. v. Emcasco Ins. Co.,* 892 N.W. 2d, 456 (Mich. Ct. App. 2016) (applying Michigan Law); and *Wilson v. Hartford Casualty Co.*, No. 20-3384, 2020 WL 5820800 (E.D. Penn, Sept. 30, 2020) (applying Pennsylvania law).

**B.      Plaintiff Alleges Direct Physical Loss to Property**

Sentinel next argues that Plaintiff fails to state a plausible claim for Business Income or Expense coverage because Plaintiff's business was "interrupted because of government orders – not because of any physical damage to its property." *See* Motion at 15:19–20. Here, too, Sentinel's arguments rely on an incomplete statement of California law governing commercial property policies.

**1.      Direct Physical Loss or Damage Due to the Coronavirus Need Not Be a Permanent Deprivation.**

Courts in California have found that "loss of use" by itself constitutes "physical loss" even absent other "damage" to the insured property. For example, courts have held that the definition of "property damage" may include coverage for temporary loss of use of tangible property that is "not" physical injured." *See Thee Sombrero, Inc, v. Scottsdale Ins. Co.* 28 Cal.App5th 729, 733 (4th Dist. 2018) ("If

your leased apartment was rendered uninhabitable by some noxious stench, you would conclude that you had lost the use of tangible property"; and *Cooper v. Travelers Indem. Co. of Illinois* No. C-01-2400-VRW, 2002 WL 32775680 at *3 (N.D. Cal. Nov. 4, 2002) (finding that the presence of *bacteria*, absent any other damage to the property, is sufficient to constitute direct physical loss).

In *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.* Case No. CV 1704908 AB (KSX), 2018 WL 3829767 at *3 (C.D. Cal. July 11, 2018) (applying California law), the Court observed that "to interpret 'physical loss of' as requiring 'damage to' would render the 'or damage to' portion of the same clause meaningless, thereby violating a black letter canon of contract interpretation – that every word be given a meaning." (*Id*. at *3)

Contrary to Sentinel's assertion, the legal authority enumerated above demonstrates that "direct physical loss or damage" *can*, in fact, arise from impacts that are non-structural in nature. These include those caused by bacteria, smoke, and fumes – covered causes that *do* result in the temporary ability to fully use premises.

The authority advanced by Sentinel, in an attempt to support its position that "direct physical loss or damage to property" should be construed to exclude temporary loss of use of property is, at best, incomplete.  First, Sentinel quotes from *MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen. Ins. Co.,* 187 Cal.App.4th 766, 778 (2010). However, the facts at issue in that case are inapposite to those at issue here. In *MRI Healthcare*, an insured sought coverage for property damage that occurred where an MRI machine failed to function after it was <u>voluntarily</u> ramped down <u>by the insured</u> as a <u>precaution</u> before roof repairs were made, necessitated by storm damage from an earlier storm. There, the Court found that the "distinct, demonstrable physical alteration" was *not* caused by the application of external force, but rather by an affirmative, <u>voluntary act</u> of the insured. *Id.* at 780.

This short summary illuminates *MRI Healthcare*'s inapplicability. First, unlike Mostre, the insured in *MRI Healthcare* in no way sought coverage for lost

- 14 -

income. Second, and more significantly, Mostre's business was *not* voluntarily suspended. Instead, that decision was made *for Mostre* as a result of **external forces**. Here, two external forces – the coronavirus itself, as well as orders relating to the presence of coronavirus, <u>separately and apart</u> prevailed upon Plaintiffs' business, causing it to suffer a substantial loss of business income. Since the pandemic began, two California courts distinguished *MRI Healthcare* and declined to apply *MRI Healthcare's* reasoning in the context of the insured's claim for COVID-19 related business income coverage. *See, Goodwill Industries of Orange County, California v. Philadelphia Indemnity Insurance Company*, No. 30-2020-01169032-CU-IC-CXC at *3 (Orange Cnty., Jan 28, 2021) (overruling insurer's demurrer, recognizing that while "California federal cases have interpreted *MRI Healthcare* to require a physical change in the property or permanent dispossession of the property . . . these federal California cases are not binding on this Court"); and *Boardwalk Ventures CA, LLC v. Century-National Insurance Company,* No. 20STCV27359 at *6 (Los Angeles Cnty., Mar. 18, 2021) (noting that application of *MRI Healthcare* in the context of COVID-19 related business interruption claims is unclear). *See* Plaintiff's Appendix of Unpublished Authority, "Appendix", Ex. A and B. In light of this California state court authority, this Court should follow suit.

Next, Sentinel posits that *10e v. Travelers Indem. Co. of Connecticut,* No. 2:20-cv-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020), stands for the proposition that a temporary impairment to economically valuable use of property does not amount to physical loss or damage. *10e* is distinguishable from the case at bar in that the *10e* court observed that while "Plaintiff's FAC points generally to the physical action of the coronavirus, which 'infects and stays on surfaces of objects or materials . . . for up to twenty-eight days . . . Plaintiff does not allege actual cases of 'direct physical loss of or damage to property' at other locations. At most, the FAC points to a mere possibility." *Id.* at *5. In other words, the plaintiff in *10e* merely indicated that coronavirus infection was *possible,* and the court observed that

this mere possibility was not enough. In contrast, Mostre has indicated that coronavirus infection *did*, in fact, happen at covered properties. *See* Compl. at ¶ 35.

The Policy is also distinct from those considered by other courts in that it has *dependent property coverage* that can and should trigger because it is undeniable that the coronavirus *was* present at properties that qualify as dependent properties. In both the Policy incorporated by reference in the Complaint and Sentinel's Motion (*See* Motion at 3:14–17), it is noted that the Policy provides that Sentinel "will pay for the actual loss of Business income" sustained "due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss." *See* Ex. A at 42. Under the Policy, "Dependent Property means property owned, leased, or operated by others whom you depend on to . . . **accept your products or services**." *Id.* at 46.  The Complaint pleads that "Mostre Exhibits specializes in the design, production and rental of exhibits for trade shows, corporate environments, retail stores, special events, user conferences, annual meetings, and outdoor events." Compl. at ¶ 1. The Complaint also pleads that "As a result of the . . . **community infection of coronavirus in and around Franklin, Tennessee and Vista, California**, trade shows, corporate environments, retail stores, special events, user conferences, annual meetings, and outdoor events have been closed or canceled." *Id.* at ¶ 35. Such allegations sufficiently plead that dependent properties *were* infected with coronavirus (again, by travelers from out of state, as alleged at Compl. ¶ 34), causing direct physical loss to those properties.

If a policy, like that at issue here, offers dependent property coverage and does not restrict the term "customer" to entities with a direct connection to the insured, courts will not impose that limitation. In fact, even if a policy does explicitly restrict coverage to "direct suppliers," disputes may surface, as demonstrated by *Millennium Inorganic Chemicals Ltd. v. National Union Fire Insurance Company of Pittsburgh*, 744 F.3d 279 (4th Cir. 2014). In the instant case, the Policy does not even bother to use the term "direct customer," and certainly does not contain a specific list of the

Insured's customers that would need to be impacted so as to trigger coverage. Under *Millennium*, the Policy is, at the very least, ambiguous.

Other Courts have found in concert with this result, as in *Archer Daniels Midland Company v. Aon Risk Services, Inc. of Minnesota*, 2002 WL 31185884 (D. Minn. 2002), *judgment aff'd*, 356 F.3d 850, 63 Fed. R. Evid. Serv. 444 (8th Cir. 2004.) That court interpreted a policy that covered business income losses resulting from damage to the property of "any supplier of goods or services," holding that farmers who sold grain to a dealer, who in turn resold grain to the insured, were suppliers to the insured for purposes of business interruption coverage. In addition, *Millennium Inorganic Chemicals Ltd. v. National Union Fire Ins. Co. of Pittsburgh*, PA, 2012 WL 4480708 (D. Md. 2012), demonstrates that losses to distant suppliers who are not even in privity with the insured can justify coverage under the more restrictive policy language. There, the Court found that a "direct supplier" could reasonably be interpreted to encompass a natural gas producer that the insured only indirectly did business with through their gas utility.

Here, the relationship between the Insured and the Dependent Properties identified in the Complaint is not nearly as attenuated as in *Millennium* and *Archer Daniels*. Plaintiff's business relies on the operation of conference centers and large venues. Compl. at ¶ 1. When those venues closed, its ability to secure business evaporated. *Id*. The language of the Policy does not tie coverage to customers with whom the insured has a direct relationship. Instead, Sentinel elected to use the broadest language imaginable, creating an ambiguity that must be construed in favor of the insured. *Bank of the West v. Superior Court* (1992) 2 Cal. 4th 1254, 1265.

Given that the Subject Policy contains up to $25,000 of coverage for lost Business Income from Dependent Properties, allegations of such facts are, on their own, sufficient to give rise to a claim for coverage. Moreover, any deficiencies in such allegations can be readily cured by amendment, and in any event such factual determinations are improper subjects of a motion for judgment on the pleadings.

- 17 -

### 2. Direct Physical Loss Does Not Require a Tangible, Physical Alteration to Property, but Rather Encompasses Loss of Use.

Sentinel next attempts to disclaim responsibility for its incomplete drafting of the Subject Policy by maintaining that the Policy "requires a distinct, demonstrable physical change in or alteration of the property." Motion at 19:3–5.  However, under California law, the phrase "direct physical loss or damage to property" contemplates *more* than only physical alterations to Insured Property – it encompasses loss of use.

California and other jurisdictions have regularly found that an insured's *loss of use* of business property constitutes "physical loss or damage," even where no structural damage or physical alteration occurred. Since the inception of this action, a Missouri federal court found that insureds who sought coverage for COVID-19 related losses, plausibly stated claims for physical loss, civil authority, and dependent property coverage. *See Studio 417, Inc., et al., v. The Cincinnati Ins. Co.* No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug 12, 2020). The weight of California law also overwhelmingly supports Plaintiff's position.

In *Cooper v. Travelers Indem. Co. of Illinois,* Case No. C-01-2400-VRW, 2002 WL 32775680 at *1 (N.D. Ca. Nov. 4, 2002), *aff'd,* 113 F. App'x 198 (9th Cir. 2004) (applying California law) a court found that an insured property was rendered "unusable or uninhabitable" by the presence of a disease-causing agent no less virulent than COVID-19: *E. Coli* bacteria.  In addition, in determining whether "physical loss or damage" occurred, the court was asked to consider whether an insured property's closure was encompassed by the policy's definition of "suspension." There, the Court found that, "***by the terms of the policy***, the closure . . . was a necessary suspension." *Id.* at *5 (emphasis added).

Like the policy at issue in *Cooper*, the Policy incorporates a definition of "suspension." The applicable definition defines suspension to require a "***slowdown or cessation*** of . . . business activities." Ex. A at 44 (emphasis added). Just such a slowdown – a precipitous decline in business activity due to the presence of a virus and its associated pandemic – occurred here. Compl. at ¶ 35. While some policies

- 18 -

may define "suspension" to require a *complete* shutdown of activity, the Policy fails to do so. *See* Ex. A at 44. Instead, it explicitly broadens the definition to encompass a "slowdown." *Id.* Therefore, under the terms of the Policy, a "suspension" has occurred, and the threshold consideration for *Cooper*'s analysis is satisfied.

Upon finding that a "suspension" occurred, the court in *Cooper* went on to find that damage to "covered property" was "not required by the terms of the Policy to trigger coverage for loss of business income." *Cooper* at *5. In other words, the Court found that the presence of bacteria was sufficient to constitute "direct physical loss or damage" *even if* such presence did **not** cause actual structural alteration or damage to business property. If non-structural forces, such as E. Coli bacteria, may cause "physical loss or damage," so too should the presence of a virulent virus.

Other California cases are in accord with a broad construal of the term "direct physical loss or damage." *See, Strickland v. Federal Ins. Co.*, 200 Cal.App.3d 792 (1988) (finding insured entitled to coverage for loss to home without tangible physical damage caused by landslide when the home had not collapsed or was not otherwise rendered uninhabitable); *Hughes v. Potomac Ins. Co. of D.C.* 199 Cal.App.2d 239 (1962) (rejecting insurer's interpretation that building was not "damaged" by landslide so long as its paint remained intact and its walls held together, observing that "no rational person" would be "content" to reside there.)

Other courts in California have also found that "loss of use" by itself constitutes "physical loss" even absent any other "damage" to the insured property. In *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.* Case No. CV 17-04908 AB (KSX), 2018 WL 3829767 at *3 (C.D. Cal. Jul. 11, 2018) (applying California law), the Court observed that "to interpret 'physical loss of' as requiring 'damage to' would render the 'or damage to' portion of the same clause meaningless, thereby violating a black letter canon of contract interpretation – that every word be given a meaning." *Id.* at *3. As such, this Court should also construe the disjunctive "or" as requiring that "physical loss" and "damage" be interpreted separately.

**3.    Sentinel Authority that Insured's Loss of Use is Not "Direct Physical Loss of or Damage to Property" is Inapposite.**

In the face of their inability to marshal California authority sufficient to satisfy their interpretation of the term "direct physical loss of or damage to property," Sentinel next turns to an accounting of recent federal cases that relied on insurance companies' bad faith arguments in determining that "temporary restrictions on an insured's use of a commercial premises do not constitute direct physical loss of or damage to property at the premises." Motion at 17:13–15.

In *10e v. Travelers' Indemnity Co. of Connecticut,* 483 F.Supp.3d 828 (C.D. Cal., Sept. 2, 2020), there was only the mere possibility that COVID-19 was present on the insured premises. Here, by contrast there is a virtual certainty that it was present at least at some of Mostre's numerous dependent properties. This is more than the mere possibility contemplated in *10e*. Other federal courts have opined that, for the purposes of a motion to dismiss, allegations that the *actual presence* a contaminant (such as coronavirus) potentially trigger coverage. *See, e.g., Water Sports Kauai, Inc. v. Fireman's Fund Insurance Company,* No. 20-CV-03750-WHO, 2020 WL 6562332 (N.D. Cal., Nov. 9, 2020) at *6. Plaintiffs have alleged just that.

Sentinel's other cited cases fail in ways similar to *10e*. First, in *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.,* No. 20-CV-907-CAB-BLM, 2020 WL 8547570 (S.D. Cal. Oct. 1, 2020), the policy contained a clear and unambiguous virus exclusion that simply does not exist in the Policy. Moreover, while Plaintiffs allege that COVID-19 caused direct physical loss (Dkt. 14, 7–10), the plaintiff in *Pappy's* expressly alleged that COVID-19 **did not** cause physical loss of or damage to the properties. *Pappy's* at fn.2. *Mudpie, Inc. v. Travelers Cas. Ins. Co.,* No. 20-cv-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020), involved a policy that "contained "an exclusion for 'loss or damage caused by or resulting from any virus." *Id.* at *1. *Long Affair Carpet and Rug, Inc. v. Liberty Mut. Ins. Co.,* No. SACV 20-01713-CJC (JDE), 2020 WL 6865774 (C.D. Cal. Nov. 12, 2020), involved an exclusion for "loss or damage caused directly or indirectly by . . . any virus, bacterium, or other

- 20 -

microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.* at 3. In almost every case, courts granted motions to dismiss, in part, based on the fact that, unlike here, the insurers elected to incorporate a clear, concise exclusion.[2] Sentinel's parent company, the Hartford, previously issued just such a clear, concise exclusion,[3] but, as noted above, did not do so here. If Sentinel's intent was to include a clear exclusion, as opposed to a limited virus coverage endorsement, they knew how to do so. The fact that they chose to instead represent that the Policy affords at least some virus coverage should afford Mostre the ability to recover.

While Sentinel marshals a number of cases that purportedly reject arguments that temporary restrictions on the use of insured property due to COVID-19 constitute physical loss (*See* Motion at 17:18), many courts disagree. Insureds have prevailed on summary judgment in COVID-19 business interruption claims in several such cases, including *North State Deli, LLC v. Cincinnati Insurance Co.*, No. 20-CVS-02569 at *6 (N.C. Super. Ct, Durham Cty., Oct. 9, 2020) (concluding "loss" means "the inability to utilize or possess something," and that "direct physical loss describes the scenario where business owners . . . lose the full range of rights. . . of using or accessing their business property. This is precisely the loss caused by the Government Orders"); *Cherokee Nation v. Lexington Ins. Co.*, No. CV-2020-150 at *1 (Ok. Super. Ct., Cherokee Cnty., Jan. 14, 2021) (granting motion because Plaintiffs stated "a plausible claim for a fortuitous direct physical loss.' However, Respondents have not shown that 'exclusionary language in the policy applies to the

---

[2] Where insurers outright failed to incorporate *any* form of virus exclusion in their policies, courts have refused to grant demurrers or motions to dismiss regarding insured's claims of direct physical loss or damage arising from COVID-19. *See, e.g.*, *Best Rest Motel Inc. v. Sequoia Insurance Company*, 37-2020-00015679-CU-IC-CTL (Cal. Superior Court – San Diego County, Sept. 24, 2020) (*See* RFJN, Ex. C.)

[3] Such an exclusion was at issue in *S.A. Hospitality Group, LLC v. Hartford Fire Ins. Co*., No. 3:20-cv-01033-VLB (July 22, 2020, D. of Ct). The single-page endorsement was prominently titled "New York – Exclusion of Loss Due to Virus or Bacteria" and provided that the insurer "Will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

facts."); *Perry Street Brewing Company, LLC v. Mutual of Enumclaw Insurance Company*, No. 20-2-02212-32 (Wash. Sup. Ct., Spokane Cnty, Nov. 23, 2020) (granting motion because plaintiff "lost the ability to use its property at premises for its intended purpose.") See Appendix, Exs. D–F.

In *Kingray Inc. v. Farmers Group, Inc.* No. EDCV 2-693 JGB (SPx) 2021 WL 837622 (C.D. Cal., Mar. 4, 2021), a California federal court agreed with a plaintiff businessowner, suing for business losses arising from COVID-19, "that 'physical loss' is different from 'physical damage'", and that under California law "physical alteration to property is not necessary to constitute a physical loss." *Id.* at 9–10. The *Kingray* court referred to the California appellate case of *Hughes v. Potomac Ins. Co. of D.C.,* 199 Cal.App.2d 239 (1962), where although a landside moved a home, but left it structurally undamaged, physical loss nevertheless occurred "because the house had been rendered unusable to its owners, even though its paint was intact and its walls still adhered to one another." *Id.* at 248–49. As such, the *Kingray* court rejected the insurer's motion to dismiss. Many other courts interpreting COVID-19 related insurance disputes, have found similarly. *See, e.g., Id. at* *2–3 (collecting various courts' decisions rejecting insurer's attempts to dismiss COVID-19 related business interruption actions.)

In *Urogynecology Specialist of Florida, LLC v. Sentinel Insurance Company*, No. 6:20-cv-1174-Orl-22EJK, -- F.Supp.3d --, 2020 WL 5939172 (M.D. Fla, Sept. 24, 2020) a federal court rejected Sentinel's motion to dismiss based on a policy containing the same limited virus coverage endorsement at issue here, noting that "without any binding case law on the issue of the effects of COVID-19 on insurance contracts virus exclusions, this Court finds that Plaintiff has stated a plausible claim at this juncture." *Id.* at 4. Since none of the cases that Sentinel cites are binding on this Court, the prudent approach of *Urogynecology* should be employed.

In short, Sentinel's litany of cases do not address controlling authority to substantiate its narrow definition of "direct physical loss or damage." If Sentinel did,

in fact, intend that the property damage mean damage that can "be repaired, rebuilt or replaced," (*See* Motion at 19:8) then there could never be coverage for a loss caused by viruses. This is because the sort of harm that a virus causes is definitionally *not "*structural damage." In interpreting insurance contracts, courts "are not to insert what has been omitted" *Safeco Ins. Co. of America v. Robert S.,* 26 Cal.4th 758 (2001). This Court should follow suit.

### C. The Policy's Civil Authority Provision Provides Coverage for Claimed Losses and Expenses.

Lastly, Sentinel advances a litany of arguments in an attempt to block Plaintiff from obtaining Civil Authority Coverage. Here, too, Sentinel's arguments fail.

Sentinel claims that Plaintiff's access must be barred by a "Government order [that] specifically prohibited Plaintiff from stepping foot inside his place of business." Motion at 21:19–21. The Policy, however, makes clear that a complete prohibition of access to the insureds' premises is not required; rather, the Policy merely requires access be "prohibited" by a civil authority. Although "prohibited" is sometimes defined to mean "forbid," it is also defined to mean "hinder." *Prohibit*, Dictionary.com. "Hinder," in turn, means "to cause delay, interruption, or difficulty in" and "to be an obstacle or impediment." *See Hinder*, Dictionary.com. The relevant civil authority orders, which banned conferences, have inarguably caused an "interruption," "difficulty," and presented an "obstacle" for Plaintiff's business. See, *Hunter v. North American Co. for Life and Health Ins.*, 671 F.Supp.2d 1182 (S.D. Cal., 2009) ("Under California law, dictionary meanings, the context of the entire policy, and common sense may be employed by the court to understand how the insured might reasonably interpret exclusionary language.") *See also, Studio 417*, *supra,* 2020 WL 4692385, at *7; and *Blue Springs Dental, supra,* 2020 WL 5637963, *8 (denying motion to dismiss for COVID-19 claim where insured dental clinics closed three locations but left a fourth clinic open to provide emergency dental services: "The allegations put forth by plaintiff sufficiently establish access to the clinics was prohibited to such a degree that the Civil Authority provision could be

invoked.")

Sentinel cites *Mudpie,* 2020 WL 5525171 at *19, for the proposition that an insured "must establish the requisite causal link between damage to adjacent property and denial of access" to its property. In *Mudpie*, the insured failed to demonstrate the presence of the coronavirus. *Id.* at *5. In contrast, Plaintiffs pled the presence of the coronavirus. Compl. ¶ 35. In any event, other courts have found that such a complete prohibition by order of civil authority is not necessary to give rise to coverage. *See, e.g*, *North State Deli, supra* at *6 and *Perry Street Brewing Company, LLC, supra,* at *4 ("as a result of the proclamations and orders . . .PSBC suffered direct physical loss of its property at premises.")

### D.   Plaintiffs' Claims Survive 12(b)(6) Motion to Dismiss.

#### 1.   Plaintiff's Contract-Based Claims (Counts 1-3) Survive.

Pursuant to the discussion set forth above, Plaintiff's claims for breach of contract, tortious breach of implied covenant of good faith and fair dealing, and declaratory relief are substantiated by the allegations in the Complaint and applicable California law. Because there is coverage under the Policy, all claims survive at this juncture.

#### 2.   Plaintiff's Professional Negligence Is Dismissed.

Plaintiff has entered into a confidential settlement agreement with Defendant IOA. As such, the issue of Plaintiff's professional negligence claim is mooted.

## V.   CONCLUSION

Multiple courts, properly applying principles of California law, have found potential coverage for COVID-19 under standard business interruption policies. *See, e.g.,* the above cited cases of *Goodwill*; *Boardwalk*; and *Kingray* (collecting numerous cases). These courts reached this conclusion even when the policies at issue did not expressly provide coverage for "virus." Here, however, Sentinel's Policy **does** expressly, and prominently, purport to provide "virus" coverage both in its declaration pages, and in a boldly captioned "coverage" endorsement. In the face

of these express representations regarding coverage, the above-cited California Supreme Court's *Haynes* case is dispositive of the issues raised by this motion.

Under *Haynes*, Sentinel's purported "virus" exclusion is neither conspicuous, plain, nor clear. Rather, it is complex and convoluted, and depends upon other provisions, not cross-referenced in the virus coverage endorsement itself, but instead buried elsewhere in a voluminous and confusing policy.  As such, the Policy's so-called "virus exclusion" is incomprehensible to the average insured and unenforceable in this context. Sentinel's unreasonable interpretation of its coverage for "virus" is belied by its only example of potential coverage from the *Curtis* case– a case whose application was limited to the situation where a "windstorm" infected hogs with a virus under a vastly different farm policy. Of course, such a ridiculous interpretation, which effectively transforms "virus coverage" into "windstorm coverage," if applied here would render the promised virus coverage under this business income policy completely, and impermissibly, illusory.

Finally, in considering the factually laden issues raised by such a motion at the pleading stage, the courts in *Goodwill*, *Boardwalk*, and *Kingray* correctly found that the cases cited by Sentinel were neither binding nor persuasive. This Court should do the same and deny Sentinel's motion for judgment on the pleadings in its entirety.  Alternatively, should the Court deem it necessary for additional facts to be asserted, Plaintiff respectfully requests leave to amend the complaint.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: March 25, 2021      */s/  Charles S. LiMandri*
                            Charles S. Limandri
                            Paul M. Jonna
                            Milan L. Brandon
                            *Attorneys for Plaintiff and Counter-*
                            *Defendant Mostre Exhibits, LLC*