1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

MOSTRE EXHIBITS, LLC,

Case No. 20-cv-1332-BAS-BLM

12

                                    Plaintiff,

**ORDER GRANTING DEFENDANT SENTINEL INSURANCE COMPANY, LIMITED'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 31)**

13

        v.

14

SENTINEL INSURANCE COMPANY, LIMITED,

15
16

                                    Defendant.

17
18
19

        And Related Counterclaim

20
21
22

        Plaintiff Mostre Exhibits, LLC ("Mostre") purchased a property insurance policy

23

from Defendant Sentinel Insurance Company, Limited ("Sentinel").  During the policy

24

period, demand for Mostre's services declined with canceled trade shows, conferences, and

25

events due to the SARS-CoV-2 ("COVID-19") pandemic and various government

26

measures to slow its spread.  Mostre filed a claim with Sentinel for loss of business income

27

related to COVID-19, and Sentinel denied the claim.  Mostre brought suit, arguing that

28

- 1 -

Sentinel's denial of coverage constituted a breach of contract and the implied covenant of good faith and fair dealing.

Sentinel filed a motion for judgment on the pleadings, which asks the Court to decide whether, taking Mostre's allegations as true, Mostre's claims must be dismissed as a matter of law.  Mostre opposes the motion.  The Court finds the motion suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  Because the factual allegations in Mostre's Complaint do not establish that its claimed loss related to COVID-19 was covered under any provision of the insurance policy, the Court **GRANTS** Sentinel's motion for judgment on the pleadings.  (ECF No. 31.)

## I.     BACKGROUND

### A.     The Parties

Mostre is a Tennessee limited liability company in the business of designing, producing, and renting exhibits for "trade shows, corporate environments, retail stores, special events, user conferences, annual meetings, and outdoor events." (Compl. ¶ 1, ECF No. 1-2.)  Mostre has its principal places of business in the County of San Diego, California, and in Williamson County, Tennessee. (*Id.*)  Sentinel is a licensed Connecticut corporation authorized to do business in California with offices located in Los Angeles, California. (*Id.*)

### B.     The Policy

Sentinel issued Spectrum Business Owner's Policy No. 72 SBA AP9428 ("Policy") to Mostre for the June 25, 2019, to June 25, 2020, Policy Period.  (Compl. ¶¶ 2, 14; *id.* Ex. B. ("The Policy"), ECF No. 1-2 at 40.)  The Policy is 183 pages long and includes Property Coverage Declarations, a Special Property Coverage Form, a Business Liability Coverage Form, and various endorsements that change the terms of the Policy.  (The Policy, ECF No. 1-2 at 30–201.)

### 1.  Spectrum Policy Declarations

The Spectrum Policy Declarations page, Form SS 00 02 12 06, lists the policy period, policy number, and the type of property coverage.  (The Policy, ECF No. 1-2 at 40.)  For a total annual premium of $4,738, the Policy provides coverage for two locations: "Location 001," located in Franklin, Tennessee; and "Location 002," located in Vista, California.  (*Id.* at 41, 43.)  The Policy includes "Special Property Coverage" for "loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or physical damage," and this coverage is not subject to the Limits of Insurance.  (*Id.* at 61, 70 (Form SS 00 07 07 05 ¶ A.5.o.(3)).)  As "optional coverages applicable" to the insured property, the Policy lists, among others: (1) "Limited Fungi, Bacteria or Virus Coverage: Form SS 40 93," capped at $50,000 (*id.* at 42, 44); and (2) "Actual Loss Sustained Business Income & Extra Expense – Specified Limit Coverage: Form SS 40 60," capped at $500,000 (*id.* at 45).

### 2.  The Special Property Coverage Form

The Special Property Coverage Form, Form SS 00 07 07 05, provides, in relevant parts:

**A.   COVERAGE**
We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from a Covered Cause of Loss.
. . .

### 3.  Covered Causes of Loss

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
a.  Excluded in Section B., EXCLUSIONS; OR
b.  Limited in Paragraph A.4. Limitations; that follow.
. . .

### 5.  Additional Coverages

. . .

//

**q. Civil Authority**

(1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises."

. . .

**r. Extended Business Income**

(1) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur . . .

Loss of Business Income must be caused by direct physical loss or physical damage at the "scheduled premises" caused by or resulting from a Covered Cause of Loss[.]

(*Id.* at 61–62, 71.)

### 3.   The Actual Loss Sustained Business Income & Extra Expense – Specified Limit Coverage

The endorsement on Actual Loss Sustained Business Income & Extra Expense – Specified Limit Coverage, Form SS 40 60 10 12, provides that the insurer

will pay for the actual loss of Business Income [the insured] sustain[s] due to the necessary suspension of [the insured's] "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises," including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises," caused by or resulting from a Covered Cause of Loss.

(The Policy, ECF No. 1-2 at 162.)  This coverage is limited to $500,000, and to any "loss of Business Income that occurs within 12 months after the date of direct physical loss or physical damage." (*Id.* at 45, 162.)

//

- 4 -

### 4.   Virus Exclusion and Limited Fungi, Bacteria, or Virus Coverage

#### a.   Virus Exclusion

The Policy includes an endorsement on Limited Fungi, Bacteria, or Virus Coverage, Form SS 40 93 07 05, under which the insured can claim a maximum of $50,000 for specified losses caused by fungi, bacteria, or viruses.  (The Policy, ECF No. 1-2 at 42.)  The endorsement modifies the Special Property Coverage Form, among others.  (*Id.* at 164.)  The endorsement sets forth an exclusion ("Virus Exclusion"), which states that "regardless of any other cause or event that contributes concurrently or in any sequence to the loss," the insurer "will not pay for loss or damage caused directly or indirectly by . . . [p]resence, growth, proliferation, spread or any activity of . . . bacteria or virus."  (*Id.*)

"But if . . . bacteria or virus results in a 'specified cause of loss' to Covered Property, [the insurer] will pay for the loss or damage caused by that 'specified cause of loss.'"  (*Id.*)  The Special Property Coverage Form defines "Specified Cause of Loss" as follows: "[f]ire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage."  (*Id.* at 85.)

The Virus Exclusion does not apply when the "bacteria or virus results from fire or lightning" or "[t]o the extent that coverage is provided in the Additional Coverage – Limited Coverage for 'Fungi,' Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning."  (*Id.*)  Otherwise, the Virus Exclusion "applies whether or not the loss event results in widespread damage or affects a substantial area."  (*Id.*)

#### b.   Limited Coverage for Virus

The endorsement states that the insurer will pay for "loss or damage" caused by viruses only when the viruses "[are] the result of . . . a 'specified cause of loss' other than fire or lightning . . . or Equipment Breakdown Accident[,]" where any of those causes

"occurs during the policy period[.]"  (The Policy, ECF No. 1-2 at 165.)  "Loss or damage" is defined as:

> (1) Direct physical loss or direct physical damage to Covered Property caused by "fungi", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi", wet rot, dry rot, bacteria or virus;
>
> (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot, dry rot, bacteria or virus; and
>
> (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot, dry rot, bacteria or virus are present.

(*Id.*)

### C.   Procedural History

On or about March 16, 2020, Mostre submitted a claim with Sentinel "for loss of business income due to the community spread and infection of coronavirus" at its properties.  (Compl., ECF No. 1-2 at ¶ 36.)  In a letter dated March 16, 2020, Sentinel notified Mostre that the claim is denied for the following reasons:

> No direct physical loss or damage has occurred to property at the scheduled premises listed in your policy or at any location that would qualify as a dependent property. Additionally, no business personal property owned by you suffered any direct physical loss or damage from this event.

(*Id.* ¶ 37; *id.*, Ex. C, ECF No. 1-2 at 203.)

Following the denial of coverage, Mostre filed the present action on May 6, 2020, in the Superior Court of the State of California, raising four causes of action: breach of contract (First Cause of Action), tortious breach of the implied covenant of good faith and fair dealing (Second Cause of Action), declaratory relief (Third Cause of Action), and professional negligence (Fourth Cause of Action).  (Compl., ECF No. 1-2.)  Sentinel timely removed the action to federal court.  (Notice of Removal, ECF No. 1.)

Sentinel filed the present motion for judgment on the pleadings. (ECF No. 31.) Mostre filed a brief in opposition of the motion (ECF No. 32), and Sentinel a reply brief (ECF No. 33). Mostre withdrew its Fourth Cause of Action for Professional Negligence. (ECF No. 32 at 24:19–20.) The motion is ripe for the Court's decision.

## II.   SENTINEL'S RULE 12(c) MOTION

Sentinel's motion and Mostre's opposition brief ask the Court to interpret various provisions of the Policy to determine whether a judgment on the pleadings under Rule 12(c) is appropriate. The Policy was issued to Plaintiff in California and covers a property located in California. (*See* The Policy, ECF No. 1-2 at 40, 43.) Thus, California law applies.[1] *See Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001).

In the following parts, the Court first reviews the legal standards applicable to Federal Rule of Civil Procedure 12(c), then summarizes applicable principles of California insurance law, before analyzing the motion and the opposition.

### A.   Legal Standards

#### 1.   Rule 12(c) of the Federal Rules of Civil Procedure

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion is

---

[1] To the extent that the Policy also covers a property in Tennessee, both parties assume that California law applies. When the laws of more than one state potentially apply, a federal court sitting in diversity applies the forum state's choice-of-law rules. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Under California choice of law rules, an insurance "contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. The Policy lists both California and Tennessee locations as covered properties and includes a separate endorsement entitled California Changes. (The Policy, ECF No. 1-2 at 41, 117.) The Policy was issued to Mostre's California address. (*Id.* at 40.) Based on the above, the Court finds that California was the intended place of performance of the insurance contract and applies California law to interpret the Policy. *See Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1450 (2007) ("The parties' intention as to the place of performance sometimes can be gleaned from the nature of the contract and the surrounding circumstances, even if the contract does not expressly specify a place of performance."), *as modified* (Sept. 5, 2007).

- 7 -

'functionally identical' to a Rule 12(b)(6) motion, and the same legal standard applies to both." *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F. Supp. 3d 932, 935 (N.D. Cal. 2019) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)).  Therefore, "[a] judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998).

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  It is the moving party's burden to demonstrate that both of these requirements are met.  *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984).

### 2.    California Insurance Law

"Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *St. Mary & St. John Coptic Orthodox Church v. SBC Ins. Servs., Inc.*, 57 Cal. App. 5th 817, 825 (2020); *see also Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992) ("While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.").

In interpreting an insurance policy, the court will "infer the parties' intent, if possible, solely from the written provisions of the contract." *Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 37 (2018) (citing Cal. Civ. Code § 1639).  "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation." *Hovannisian v. First Am. Title Ins. Co.*, 14 Cal. App. 5th 420, 430 (2017) (citation omitted) (quoting *Ameron Int'l Corp. v. Ins. Co. of Pa.*, 50 Cal. 4th 1370, 1378 (2010)).

The court "must also 'interpret the language in context, with regard to its intended function in the policy.'" *McMillin Mgmt. Servs., L.P. v. Fin. Pac. Ins. Co.*, 17 Cal. App. 5th 187, 201 (2017) (quoting *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 288 (2014)). "Significantly, the provisions of an endorsement prevail over conflicting provisions in the body of the policy, if the relevant language of the endorsement is conspicuous and free from ambiguity." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1217 (2004). "Coverage clauses are interpreted broadly in favor of the insured, and exclusionary clauses and limitations on coverage are interpreted narrowly against the insurer." *St. Mary*, 57 Cal. App. 5th at 825.

"A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). If there is an ambiguity in the policy, the court "must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations." *Bank of the W.*, 2 Cal. 4th at 1265. The insured's objectively reasonable expectations may restrict rather than expand coverage—the insured cannot claim coverage where a reasonable person would not expect it. *Old Republic Ins. Co. v. Superior Ct.*, 66 Cal. 4th 128, 144 (1998), *disapproved on other grounds by Vandenberg v. Superior Ct.*, 21 Cal. 4th 815, 841 n.13 (1999). The reasonable expectations inquiry "requires a consideration of the policy as a whole, the circumstances of the case in which the claim arises and 'common sense.'" *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1058 (2002) (quoting *Bank of the W.*, 2 Cal. 4th at 1265). Finally, if these rules do not resolve the issue, the last step is for the court to construe the policy's ambiguity against the insurer. *E.g.*, *St. Paul Fire*, 101 Cal. App. 4th at 1058. That said, if coverage turns on disputed issues of material fact, resolving the issue as a matter of law is not appropriate. *See, e.g.*, *Barnes v. Windsor Sec. LLC*, No. 13-CV-01878-WHO, 2013 WL 4426244, at *5 (N.D. Cal. Aug. 15, 2013) (denying motion for judgment on the pleadings upon finding issue of fact as to ownership of the insurance policy at issue); *cf.*

20cv1332

*Guastello v. AIG Specialty Ins. Co.*, 61 Cal. App. 5th 97, 100, 106 (2021) (determining when an "occurrence' took place under policy was a disputed question of fact).

### B.    ANALYSIS

With the above contract interpretation principles in mind, the Court turns to analyze Sentinel's motion for judgment on the pleadings and Mostre's opposition to the motion. Sentinel argues that because the terms of the Policy provide no coverage for Mostre's claimed losses, the Court should deny as a matter of law Mostre's first three causes of action: breach of contract (First Cause of Action), tortious breach of the implied covenant of good faith and fair dealing (Second Cause of Action), and declaratory relief (Third Cause of Action).   Those causes of action are based on Mostre's allegation that Sentinel denied coverage under the following provisions of the Policy: (1) "Actual Loss Sustained Business Income and Extra Expense for up to $500,000 for each insured location for a total of at least $1 million as provided under Form SS 00 02 12 06 of the Policy and the Policy's Property Coverage Declarations," which references "'Specified Limit Coverage' under Form SS 40 60 10 12 of the Policy"; (2) "Form SS 04 28 09 07's Special Property Coverage and Civil Authority provisions for actual loss of business income"; and (3) "Limited Virus Coverage of $50,000 per insured location for a total of $100,000 as provided under Form SS 40 93 07 05 of the Policy."   (Compl. ¶ 49.)   The Court examines each provision to determine whether, on the face of the pleading, Mostre's claimed loss is covered under any of the provisions.

### 1.    Coverage Under the Actual Loss Sustained Business Income & Extra Expense – Specified Coverage

Mostre's Complaint alleges that Sentinel breached the terms of the Policy by denying Mostre coverage under the endorsement on Actual Loss Sustained Business Income & Extra Expense – Specified Coverage (Form SS 40 60 10 12).   (Compl. ¶¶ 16–17, 49.)   The endorsement modifies the Special Property Coverage Form and provides

coverage for "the actual loss of Business Income[2] [the insured] sustain[ed] due to the necessary suspension of [the insured's] 'operations' during the 'period of restoration.'" (The Policy, ECF No. 1-2 at 162.)  The endorsement expressly states that "[t]he suspension must be caused by direct physical loss of or physical damage to property . . . caused by or resulting from a Covered Cause of Loss." *Id.*  The Special Property Coverage Form, to which the endorsement applies, defines "Covered Cause of Loss" as "RISKS OF DIRECT PHYSICAL LOSS." (*Id.* at 62.)

Based on the plain reading of the endorsement, to establish coverage for loss of business income, Mostre must allege that the suspension of operations was caused by the need to restore a "direct physical loss" to its property. (*Id.* at 62, 162.)  "Where, as here, a policy covers 'direct physical loss of or damage to' property, the 'direct physical loss requirement is part of the policy's insuring clause and accordingly falls within [the insured's] burden of proof.'" *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-16858, --- F.4th ----, 2021 WL 4486509, at *3 (9th Cir. Oct. 1, 2021) (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 115 Cal. Rptr. 3d 27, 36 (2010)).  Although direct physical loss is not defined by the terms of the policy, "[t]he fact that a term is not defined in the policies does not make it ambiguous." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998).  California courts have required "interpret[ing] an insurance policy according to the 'clear and explicit' meaning of the terms as used in their 'ordinary and popular sense.'" *Mudpie, Inc.*, --- F.4th ----, 2021 WL 4486509, at *3 (quoting *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990)).  In other words, courts must interpret an insurance provision "as would a reasonable layperson, not an expert, attorney, or a historian." *See id.* (quoting *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal.4th 465, 472 n.2 (2004)).  Applying this approach, the

---

[2] Form SS 40 60 10 12 defines "Business Income" as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred"; and "Continuing normal operating expenses incurred, including payroll."  (The Policy, ECF No. 1-2 at 162.)

Ninth Circuit has adopted an interpretation of the phrase "direct physical loss of or damage to property" that requires a "distinct, demonstrable, physical alteration" or a "*physical change* in the condition of the property." *See id.* at *4 (construing *MRI Healthcare*, 115 Cal. Rptr. 3d at 37–38).  The Ninth Circuit found that this interpretation is consistent with other provisions of the insurance policy at issue:

> For example, the [p]olicy provides coverage for Business Income and Extra Expense only during the "period of restoration," and it defines the "period of restoration" as ending on "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or . . . [t]he date when business is resumed at a new permanent location." That this coverage extends only until covered property is repaired, rebuilt, or replaced, or the business moves to a new permanent location suggests the [p]olicy contemplates providing coverage only if there are physical alterations to the property. To interpret the [p]olicy to provide coverage absent physical damage would render the "period of restoration" clause superfluous.

*Id.* at *5.

Here, similarly, the Policy provides coverage for "actual loss of Business Income . . . during the 'period of restoration.'"  (The Policy, ECF No. 1-2 at 162.)  Interpreting the phrase "direct physical loss of or damage to property" to require a physical change to the property gives meaning to the "period of restoration" clause.  The Court adopts this interpretation for the same reasons that the Ninth Circuit did in *Mudpie*.  Having so found, the Court turns to examine whether Mostre has alleged that it suspended its business due to any physical change.  It has not.  Mostre's Complaint merely states that it suspended its business due to "Government Orders, and community infection of coronavirus." (Compl. ¶ 35.)  Neither the community spread of a viral disease nor a government order to address it is a "distinct, demonstrable, physical alteration" of an insured property.  Therefore, on the face of the Complaint, Mostre can state no claim under the Actual Loss Sustained Business Income & Extra Expense – Specified Coverage.

Mostre argues that its alleged loss of use of the insured property by itself constitutes direct physical loss.  The Ninth Circuit and other district courts in this circuit have rejected

20cv1332

the exact argument that Mostre raises.  *See Mudpie, Inc.*, 2021 WL 4486509, at *5 (declining to "interpret 'direct physical loss of or damage to' to be synonymous with 'loss of use,'" relying on California cases that have distinguished economic losses from physical ones); *see, e.g.*, *Wellness Eatery La Jolla LLC v. Hanover Ins. Grp.*, 517 F. Supp. 3d 1096, 1103–04 (S.D. Cal. 2021) (rejecting the argument that "'direct physical loss of' property occurs when the premises are rendered unusable for their intended purposes"); *10E, LLC v. Travelers Indem. Co. of Conn.*, 483 F.Supp.3d 828, 836 (C.D. Cal. 2020) ("An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage.").  The Court follows those decisions and finds that Mostre's alleged loss of use of its property—in the absence of any allegation of distinct, demonstrable, physical change—does not constitute direct physical loss or damage.

To the extent that Mostre alleges that "the deadly coronavirus physically infects and stays on the surfaces of objects or materials for many days" (Compl. ¶ 34), the surfaces "can be disinfected and cleaned" and thus the presence of virus particles on surfaces of the insured property does not constitute a physical change to the property.  *See O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 512 F. Supp. 3d 1019, 1024 (N.D. Cal. 2021); *see also Barbizon Sch. of S.F., Inc. v. Sentinel Ins. Co. LTD.*, No. 20-CV-08578-TSH, 2021 WL 1222161, at *9 (N.D. Cal. Mar. 31, 2021) (collecting cases rejecting the theory that the virus constitutes direct physical loss or damage because virus can remain on the surface of objects or materials); *accord Daneli Shoe Co. v. Valley Forge Ins. Co.*, No. 20-CV-1195 TWR (WVG), 2021 WL 1112710, at *3 (S.D. Cal. Mar. 17, 2021) ("The presence of COVID-19 on surfaces does not 'physically alter' the property.").

Taking all the allegations contained in the pleading as true, Mostre's claimed loss is not covered under the Actual Loss Sustained Business Income & Extra Expense provision.

//

//

//

- 13 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2.    Coverage Under the Special Property Coverage Form

Mostre alleges that it is entitled to coverage under the Special Property Coverage Form (Form SS 00 07 07 05). (Compl. ¶¶ 18, 49.) Form SS 00 07 07 05 provides coverage only for "direct physical loss of or physical damage . . . caused by or resulting from a Covered Cause of Loss." (The Policy, ECF No. 1-2 at 61.) In addition, the "Additional Coverages" provisions under which Mostre claims to have coverage—**q. Civil Authority**" and "**r. Extended Business Income**"—also require direct physical loss. (The Policy, ECF No. 1-2 at 71.) The "Civil Authority" section extends coverage to "the actual loss of Business Income [the insured] sustain[ed] when access to [the] 'scheduled premises' [was] specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [the] 'scheduled premises.'" (*Id.*) Because the Policy defines Covered Cause of Loss as "risk of direct physical loss" (*id.* at 62 (removing emphasis)), Mostre must allege facts establishing the civil authority's orders were issued because of the presence of a risk of direct physical loss to the insured property. Similarly, the "Extended Business Income" section expressly states that the covered loss of business income "must be caused by direct physical loss or physical damage." (*Id.* at 71.)

As explained in detail above, "direct physical loss of or physical damage to" the property requires distinct physical change. *See supra* Part II.B.1. Mostre's Complaint lacks allegations that would establish that its insured property sustained such physical change or that the government issued the closure orders because of any risk of direct physical loss. Although the Complaint states that "the government . . . recognized the coronavirus as a cause of real physical loss and damage" (Compl. ¶ 25), that statement is conclusory and does not allow the Court to draw a reasonable inference that the government's orders were issued because of the presence of a risk of direct physical loss to the insured property. Thus, the Court discounts the conclusory allegation and does not give it a presumption of truth. *See Iqbal*, 556 U.S. at 678–79; *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012).

20cv1332

In sum, on the face of the Complaint, Mostre has no coverage under the Special Property Coverage Form, which includes the "Civil Authority" and "Extended Business Income" provisions.

### 3. Coverage Under the Limited Fungi, Bacteria, or Virus Coverage

Mostre claims that it is entitled to $50,000 in business income coverage for each location under the Limited Fungi, Bacteria, or Virus Coverage. (Compl. ¶ 20.) The Endorsement on Limited Fungi, Bacteria, or Virus Coverage (Form SS 40 93 07 05) extends coverage to "loss or damage" by a virus only when the virus "is the result of . . . a 'specified cause of loss' other than fire or lightning . . . or Equipment Breakdown Accident[,]" where any of those causes "occurs during the policy period[.]" (The Policy, ECF No. 1-2 at 165.) The Endorsement defines "loss or damage" as:

> (1) Direct physical loss or direct physical damage to Covered Property caused by "fungi," wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi," wet rot, dry rot, bacteria or virus;
>
> (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi," wet rot, dry rot, bacteria or virus; and
>
> (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi," wet rot, dry rot, bacteria or virus are present.

(*Id.*)  Again, on the face of the Complaint, Mostre has not sustained any direct physical loss or direct physical damage. *See supra* Part II.B.1. Mostre does not claim that it "t[ore] out and replace[d]" any part of its property nor that it "remov[ed], repair[ed], replac[ed], or restor[ed]" any damaged property. (*See* The Policy, ECF No. 1-2 at 165.) Thus, Mostre has no coverage under the Limited Fungi, Bacteria, or Virus Coverage.

Mostre argues that "[a]n interpretation of the policy that would either give effect to the virus exclusion . . . or limit coverage to situations caused by the above-discussed specified causes of loss (or both), improperly renders the 'Limited Virus Coverage' term

20cv1332

meaningless." (Pl.'s Opp'n at 8:10–13.)  Because the Court does not rely on the terms of "specified cause of loss" nor the Virus Exclusion, the Court need not reach the issue as to whether the terms of the Limited Fungi, Bacteria, or Virus Coverage are illusory.  For the same reason, the Court declines to resolve whether the Virus Exclusion is "indecipherable to the average insured." (*See* Pl.'s Opp'n at 4.)

### 4.   Conclusion

In sum, on the face of Mostre's Complaint, it did not have coverage under the Policy. Therefore, Sentinel's rejection of Mostre's claims does not constitute a breach of contract or breach of the implied covenant of good faith and fair dealing.  *See Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 495 F.Supp.3d 848, 854 (C.D. Cal. 2020) ("Because [the plaintiff] is not entitled to coverage under the Policy, it cannot state a claim for breach of contract [or] breach of the implied covenant of good faith and fair dealing[.]"); *accord Barbizon Sch. of San Francisco, Inc.*, 2021 WL 1222161, at *10 (collecting cases).  The Court therefore dismisses Mostre's causes of action for breach of contract (First Cause of Action) and tortious breach of implied covenant of good faith and fair dealing (Second Cause of Action).  For the same reasons, the Court denies Mostre's request for declaratory relief (Third Cause of Action).

### III.   MOSTRE'S REQUEST TO AMEND THE PLEADING

In its opposition brief, Mostre asks for an opportunity to amend its pleading. (Pl.'s Opp'n at 24:19–20.)  Under Federal Rule of Civil Procedure 15(a)(1), a plaintiff may amend its pleading once as a matter of course within specified time limits.  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." *Id.* 15(a)(2).

Nevertheless, "[i]n deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to

the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Further, the court has discretion when considering the aforementioned factors. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1045 (9th Cir. 2015).  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  Finally, "[l]eave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore*, 885 F.2d at 538 (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 545 (5th Cir. 1980)).

Here, because the Court has concerns over the futility of amendment, the Court defers determining whether granting leave is appropriate until the Court may review a proposed amended pleading.  If Mostre seeks to amend its pleading, it must first file a noticed motion for leave to amend with the proposed pleading attached and in compliance with Civil Local Rule 15.1.  Any motion to amend the pleading must be filed **on or before November 2, 2021**, in compliance with this Court's Standing Order.  *See* Standing Order of the Hon. Cynthia Bashant for Civil Cases ¶ 4.

## IV.    CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings.  (ECF No. 31.)  Plaintiff may move to amend its pleading **on or before November 2, 2021**.

**IT IS SO ORDERED.**

**DATED: October 15, 2021**

Hon. Cynthia Bashant
United States District Judge

- 17 -

20cv1332